KAHN, MARTIN D., Associate Judge.
The unsuccessful plaintiff in a medical malpractice raises three issues in this appeal. Although we find no reversible error and affirm, comment is warranted on one of those issues.
A baby was born comatose because of lack of oxygen to the brain. He died some months later without recovering or leaving the hospital, and the lawsuit against the obstetrician followed. As to liability, at issue were causation and standard of care.
The plaintiffs propounded expert interrogatories to the defendant, the responses to which were a gem of obfuscation. The information to be gleaned from those answers was practically nil; however, one of *506 the very few intelligible answers was to the inquiry as to the subject matter on which each expert was expected to testify. The blanket answer was, “The care and treatment rendered to [the mother and baby].”
Among 'the eighteen expert witnesses [1] listed by the defense in the pretrial stipulation was Dr. Roger Freeman of Long Beach, California. Less than two weeks prior to the beginning of the trial the attorneys traveled to Long Beach for Dr. Freeman’s deposition by the plaintiff to be followed immediately by the same witness’s videotaped testimony on behalf of the defendant for use at trial (the latter pursuant to court order permitting it). Dr. Freeman responded appropriately to plaintiffs’ questions as to causation, but was directed by the defense attorney not to answer questions as to standard of care (after the doctor acknowledged that he did have an opinion on that issue). The same occurred on the videotaped testimony.
Over plaintiffs’ objection the trial court permitted the videotaped testimony to be presented to the jury (without the statement that Dr. Freeman had an opinion as to standard of care), and denied the request by the plaintiffs that instead Dr. Freeman be required to testify in person at the trial to allow cross-examination into the issue of standard of care.
There was no abuse of discretion by the trial court, hence our affirmance. It is safe to assume that if permitted, Dr. Freeman's opinion as to standard of care would have favored the plaintiffs. Since there were two distinct issues, had Dr. Freeman testified in person at trial on direct examination as to causation, the trial judge would have committed no error in limiting cross-examination to that subject. See § 90.612(2), Fla.Stat. (1987).
As to the plaintiffs’ deposition of Dr. Freeman, he should have answered the *507 questions as to standard of care, notwithstanding the defense protestations of work product privilege. The expert interrogatories response, such as it was, indicated that all experts were to testify as to care and treatment. Even if the response were not so broad, the work product privilege would not apply. See Mims v. Casademont, 464 So.2d 643 (Fla. 3d DCA 1985).
Notwithstanding the fact that his responses could have been excluded at trial as not being within the scope of direct examination, it is fundamental that the scope of inquiry at deposition is not so limited. Rule 1.280(b)(1) of the Florida Rules of Civil Procedure states, “It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.”
Still the trial court’s failure to require Dr. Freeman to respond to plaintiffs’ questions when the attorneys had returned from California and at the eve of trial is harmless error. That doctor’s (assumed) testimony that the defendants departed from the appropriate standard of care would probably not have been heard by the jury, so even had the plaintiffs’ attorney elicited that information at deposition, there was not much, if anything that could have been done with it. ' The plaintiffs had their own experts to express opinions in support of their position as to standard of care.
Dr. Freeman indeed should have answered, and the arrogance of the defense attorney in instructing the witness not to answer is without legal justification. Nowhere in the Florida Rules of Civil Procedure is there a provision that states that an attorney may instruct a witness not to answer a question.
Rule 1.310(d) permits suspension of the deposition pending ruling on improper examination, and that is the appropriate procedure to be followed if the objecting attorney has a valid basis for concluding that an answer to a clearly objectionable question would be so damaging that even though not permitted at trial, the information revealed would be devastating beyond repair. Rule 1.380 provides a vehicle for sanctions if the objection is valid. Of course, had the defense been acting in good faith, it could have made a motion in limine before traveling to California so that the trial court could have ruled before hand on the question of limiting the scope of examination.
There was no proper basis for objection here. .The questions should have been answered because they were within the scope of subject matter on which that expert was expected to testify. Nor was there a work product privilege. The apparent reason that the witness was instructed not to answer was simply because the defense attorney did not want to reveal adverse information. It was a calculated risk (well calculated, as it turned out) that the rules could, be violated with impunity. For the plaintiffs’ attorney to have suspended the discovery deposition to travel back to Florida to obtain a ruling prior to the imminent trial would have been foolhardy. The defense attorney would have proceeded with the videotaped deposition for trial anyway, so the plaintiffs’ attorney was left to vent his frustrations by motions to the trial court and by this appeal-all unsuccessful.
What does all this show? Unfortunately that there is a trend of selective adherence to the rules of civil procedure by the trial bar. We understand that conduct at depositions has diminished to the level that some lawyers now seek and obtain court permission to bring special masters to depositions to rule on disputes as they arise.
It also shows that the level of professionalism is not where it should be.
Sad!
This panel had accumulated a combined 62 years of trial practice before becoming judges; we are not newly arrived from another planet, and we are aware of the difficulties inherent in trial practice. Nevertheless, our professional goals are to seek truth and justice. Not only are the courts charged with that responsibility, the lawyers are too. Thwarting those goals *508 diminishes us all. We urge senior lawyers to imbue their junior colleagues with the sense of honor and fair dealing that our noble profession warrants. If the conduct and ethics of the practice of law are reduced to the level of the marketplace, the public (and the legislature) cannot be faulted for reining in the independence of the bar. That would be sad indeed.
AFFIRMED.
ANSTEAD and GLICKSTEIN, JJ., concur.

. Eighteen defense experts! We shudder at what the defense attorneys’ statement to their clients must have totaled in fees and costs. To obtain a clue we refer to the record which contains a caveat from one of the defense experts (this one located in Columbus, Ohio). It reads:
ITEMIZED CHARGES FOR PROFESSIONAL, MEDICAL-LEGAL SERVICES
Open case, preparation, review and all work on case: $1,550.00
(up to 3 hours)
$350/hr thereafter
Deposition — minimum fee $2,200 up to 3 hours, then $550/hr thereafter: 2,200.00+
Booked but cancelled or date changed 700.00
Courtroom appearance by videotape — minimum fee $3,000 up to 3 hours, then $600/hr thereafter: 3,000.00+
Booked but cancelled: 1,000.00
Date changed: 700.00
Courtroom appearances in person—
Hourly rate of $400 or minimum fee $4000 for 3 hrs. then $850/hr.
Court appearance cancelled: 1,500.00
Court appearance date changed: 700.00
Special conference with lawyer — minimum fee $500 (1 hour) then $400/hr: 500.00+
Addendum of Understanding:
— The legal firm that retains the expert (FPZ) is responsible for his fees if the other attorney does not pay.
— Payment of bills due 60 days from time of receipt, then interest starts at prime rate +1%.
— Bills will be generated on schedule when services rendered.
— Questions concerning fees should he raised prior to opening case.